1

2

3

4

5

6

7

8           **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   STEPHANIE DIANE JOHNSON,            No. CIV S-05-0431-GEB-CMK

12              Plaintiff,

13        vs.                          FINDINGS AND RECOMMENDATIONS

14   JO ANNE B. BARNHART,
     Commissioner of Social Security,
15
                Defendant.
16
     _____/
17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pending before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's

21   cross-motion for summary judgment (Doc. 22).

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

# I. BACKGROUND

Plaintiff applied for supplemental security income benefits on January 15, 2003, based on disability.  In her application, plaintiff claims that her impairment began on January 1, 2002.[1]  Plaintiff claims her disability consists of a combination of "hypertension, headaches, carpal tunnel syndrome, status post hernia repair, and obesity."   Plaintiff is a United States citizen born November 5, 1962, with an eleventh-grade education.

Plaintiff's claims were initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on April 14, 2004, before Administrative Law Judge ("ALJ") Joseph F. De Pietro.

In his June 17, 2004, decision, the ALJ made the following findings:

1. Ms. Johnson has not engaged in substantial gainful activity since the alleged onset of disability;

2. Ms. Johnson's hypertension, carpal tunnel syndrome, status post hernia repair, and obesity are severe impairments;

3. Claimant's medically determinable impairments do not meet or medically equal one of the listed impairments . . .;

4. Ms. Johnson's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision;

5. Ms. Johnson has the following residual functional capacity: she can walk/stand six to eight hours, sit six hours, lift/carry ten pounds frequently, and can occasionally use her left upper extremity to finger and feel;

6. Ms. Johnson has no past relevant work;

7. Ms. Johnson is a younger individual;

8. Ms. Johnson has a limited education;

9. Ms. Johnson has the residual functional capacity to perform substantially all of the full range of sedentary to light work;

---

[1]     In the Disability Adult Report submitted with her application, plaintiff states that her conditions first bothered her on January 1, 1999, and that she became unable to work on September 6, 2000.

10.    In light of her exertional capacity for sedentary to light work, and Ms. Johnson's age, education, and work experience, Medical-Vocational Rules 202.17 and 201.24 . . . direct[] a conclusion of not disabled;

11.    Ms. Johnson's capacity for sedentary work is substantially intact and has not been compromised by any non-exertional limitation; accordingly, using the above-cited rule(s) as a framework for decision making, Ms. Johnson is not disabled; and

12.    Ms. Johnson was not under a disability as defined in the Act at any time through the date of this decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to benefits. After the Appeals Council declined review on January 11, 2005, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

3

standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ erred in four ways in determining that she was not disabled.  Specifically, plaintiff argues: (1) the ALJ failed to properly evaluate her headaches as a severe impairment; (2) the ALJ improperly rejected the medical opinions of her treating physician and a consultative examining physician; (3) the ALJ improperly rejected her testimony as not credible; and (4) the ALJ improperly applied the Medical-Vocational Guidelines ("Grids") at 20 C.F.R., Part 404, Subpart P, Appendix 2, in determining disability.

### A.     Plaintiff's Headaches

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden establishing the severity of the

---

[2]     Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

impairment by providing medical evidence consisting of signs, symptoms, and laboratory

findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone

is insufficient.  See id.

Plaintiff claims the ALJ ". . . inexplicably failed to properly include [her]

diagnosed headaches as a severe impairment even though her treating physician, Dr. [Tillman],

specifically found that [she] would not be able to work an eight-hour day five days per week

because it was 'difficult to manage headaches.'" Plaintiff asserts that her headaches, singly and

in combination with her other impairments, are severe and that the ALJ erred in failing to

consider this impairment.

As to plaintiff's headaches, the ALJ stated:

> Ms. Johnson was also seen in April 2001 for daily headaches consistent
> with migraines and was put on medications.  There was little or no
> mention of headaches in 2002.  In January 2003, Ms. Johnson reported
> headaches, dizziness, and chest pain and reported she was under a lot of
> stress.  She was to return as needed but was not seen again until May 2003
> when she reported she was still having headaches but had self-
> discontinued Verapamil after two months as she didn't feel it was helping.
> She was put on Depakote and reported improvement in her headaches in
> July 2003.  Ms. Johnson didn't report any further headaches until March
> 2004 when she noted she was very stressed and anxious over a possible
> eviction.

Plaintiff does not challenge this assessment of the medical evidence.  In light of this assessment,

the ALJ further stated:

> In a Medical Assessment by Jennifer Tillman, M.D., hypertension, stress
> induced chest wall pain, and carpal tunnel syndrome were reported. . . .
> Dr. Tillman stated Ms. Johnson requires rest periods due to chronic
> headaches and chest wall pain probably due to stress reactions and tension
> headaches.
>
>                      * * *
>
> In making [a residual functional capacity] determination, the court has . . .
> considered the conclusions of Dr. Tillman that Ms. Johnson's chronic
> headaches and chest wall pain would prevent sustained work, but the court
> gives this conclusion little weight as the medical records report little in the
> way of objective findings or treatment required for either of these
> complaints.

As stated above, the plaintiff has the burden establishing the severity of an impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908.  The court agrees with defendant that plaintiff simply did not meet this burden with respect to her headaches.  The record reflects that plaintiff's headache symptoms improved after she was placed on medication (Depakote).  Conditions controlled by medication are not severe enough to be disabling.  See Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983).

In addition, despite plaintiff's claim of severe disabling headaches, her treatment for them was sporadic.  Plaintiff was seen for daily headaches in April 2001 and put on medication.  Then, there was no treatment at all in 2002.  She reported headaches again in January 2003, but did not return for further treatment for this complaint until May 2003.  She then reported improvement in her headaches in July 2003 and did not report any further headaches until March 2004.  The evidence in this case establishes that, at best, plaintiff's headaches constitute a slight abnormality that has no more than a minimal effect on her ability to work.  See Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

For these reasons, the court concludes that the ALJ did not err with respect to his evaluation of the severity of plaintiff's headaches.

**B.**   **Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

1    In addition to considering its source, to evaluate whether the Commissioner

2 properly rejected a medical opinion the court considers whether: (1) contradictory opinions are

3 in the record; and (2) clinical findings support the opinions. The Commissioner may reject an

4 uncontradicted opinion of a treating or examining medical professional only for "clear and

5 convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831.

6 While a treating professional's opinion generally is accorded superior weight, if it is contradicted

7 by an examining professional's opinion which is supported by different independent clinical

8 findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035,

9 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be

10 rejected only for "specific and legitimate" reasons supported by substantial evidence. See

11 Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough

12 summary of the facts and conflicting clinical evidence, states her interpretation of the evidence,

13 and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent

14 specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or

15 examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining

16 professional, without other evidence, is insufficient to reject the opinion of a treating or

17 examining professional. See id. at 831. In any event, the Commissioner need not give weight to

18 any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d

19 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported

20 opinion); see also Magallanes, 881 F.2d at 751.

21    Plaintiff asserts the ALJ improperly rejected the opinion of her treating physician,

22 Dr. Tillman, and also the opinion of a consultative examining physician, Dr. McIntire.

23    As to Dr. Tillman, the ALJ stated:

24    . . . Dr. Tillman opined Ms. Johnson's ability to walk, stand or sit was not
      affected by any impairment and that she could stand/walk eight hours and
25    sit six hours. She is able to frequently lift/carry only ten pounds due to
      continued left wrist pain/stiffness and history of right carpal tunnel
26    syndrome. . . . Dr. Tillman concluded Ms. Johnson is able to perform the

full range of sedentary work but didn't feel she could work an eight-hour day five days per work as it is difficult to manage headaches.

As outlined above, the ALJ rejected the portion of Dr. Tillman's opinion related to plaintiff's headaches, which are not sufficiently severe. Otherwise, and contrary to plaintiff's assertion here, Dr. Tillman's assessment was accepted by the ALJ. Because plaintiff's headaches are not sufficiently severe, the ALJ did not err in rejecting this portion of Dr. Tillman's opinion. The reasons the ALJ gave for concluding that plaintiff's headaches are not severe are also sufficient to support the rejection of Dr. Tillman's opinion as to headaches. See Lester, 81 F.3d at 830.

As to Dr. McIntire, plaintiff contends the ALJ improperly discounted his opinion that plaintiff would have difficulties with activities that require fine bilateral rapid precise finger movements, such as typing. Plaintiff states that this opinion is not consistent with the ALJ's finding that plaintiff could perform the full range of sedentary and light work. Plaintiff relies on SSR 96-9p for her conclusion. SSR 96-9p states that the loss of fine manual dexterity narrows the ranges of sedentary and light work more than it does the ranges of medium, heavy, and very heavy work. See SSR 96-9p. Plaintiff reads too much into this ruling. Just because a range of work is narrowed by a particular condition, does not mean that such work is completely precluded. See SSR 83-10 (stating that many unskilled light jobs generally do not require use of the fingers for fine activities).

Contrary to plaintiff's assertion, the ALJ actually accepted Dr. McIntire's opinion. While Dr. McIntire opined that plaintiff would have difficulty with fine motor finger movements, he did not preclude all sedentary work. In fact, Dr. McIntire opined that plaintiff's ability to use her right (dominant) hand was unimpaired and that she could use her left hand for simple gripping and grasping. This is consistent with the ALJ's functional capacity assessment, which places limitations on use of her left hand.

For these reasons, the court concludes that the ALJ did not err in his assessment of the opinions of Dr. Tillman and Dr. McIntire.

8

C.     **Plaintiff's Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See id. at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

Plaintiff asserts the ALJ failed to provide specific reasons for rejecting her testimony.  As to plaintiff's credibility, the ALJ stated:

> The court has also considered Ms. Johnson's testimony of pain and
> inability to engage in work activity and finds her testimony not credible.
> Ms. Johnson testified she has seven children, is active at school in
> activities such as PTA, she goes shopping with them but her children do
> the housework.  However, in earlier statements, Ms. Johnson reported she

cooks, cleans, takes care of her children, . . . shops, and walks her children to school.  These activities were essentially confirmed by Teanna Johnson, Ms. Johnson's daughter.  Such activities do not indicate a disabling impairment in Ms. Johnson's residual functional capacity for sedentary and light work.  No significant atrophy, neurological deficits, radicular pain, weakness, reflex absence, or decreased sensation were reported.  Ms. Johnson has not participated in the treatment normally associated with a severe pain syndrome.  She betrayed no evidence of pain or discomfort while testifying at the hearing.  While the hearing was short-lived and cannot be considered a conclusive indicator of Ms. Johnson's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some weight in reaching the conclusion regarding the credibility of Ms. Johnson's allegations and Ms. Johnson's residual functional capacity.  Finally, the type, dosage, and side effects of medication employed to treat her impairment would not preclude her from performing work at sedentary and light exertion levels.  On the basis of the foregoing, the court concludes claimant's allegations of disabling limitations are unsupported by the evidence.

Here, plaintiff asserts that the ALJ failed to note things she cannot do.  For example, plaintiff states that there is no mention in the ALJ's decision concerning plaintiff's statements that, while she used to do dishes, she does not do them anymore, and that sometimes she cannot get out of bed.  However, as defendant points out, questions of credibility and conflicts in the testimony are functions solely of the Commissioner.  See Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  As long as the ALJ's assessment of the plaintiff's contentions is reasonable and supported by substantial evidence in the record, this court may not second guess the credibility finding even if a contrary finding may also be reasonable.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).   In other words, even if the evidence can support either finding, the district court may not substitute its judgment for that of the ALJ.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

In this case, the court finds that the ALJ in fact provided sufficient reasons for rejecting plaintiff's credibility, and that such reasons are supported by substantial evidence in the record.  Even assuming that plaintiff's assessment is also supported by the record, this court may not second-guess the ALJ's credibility determination.

///

D.   **Application of the Grids**

The Grids provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

1341 (9th Cir. 1988).

Plaintiff argues that she possesses non-exertional limitations which required the ALJ to obtain testimony from a vocational expert concerning her residual functional capacity. However, to the extent plaintiff has non-exertional limitations – such as generalized pain or headaches – such limitations do not preclude use of the Grids where they do not impact plaintiff's exertional abilities.  See Bates, 894 F.2d at 1063; Polny, 864 F.2d at 663-64.  Such is the case here.  All of the medical opinions in this case, from plaintiff's treating physician to the agency consultative examining physicians, agree as to plaintiff's exertional abilities – that she can do sedentary to light work with some limitation on left hand movement.

The court, therefore, concludes that the ALJ did not err in applying the Grids in lieu of obtaining testimony from a vocational expert.

**IV.  CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, the undersigned recommends that:

    1.    Plaintiff's motion for summary judgment be denied;

    2.    Defendant's cross-motion for summary judgment be granted; and

    3.    The Clerk of the Court be directed to enter judgment and close this file.

///
///
///
///
///
///
///
///

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   August 18, 2006.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE